UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IN THE MATTER OF THE SEARCH OF:
A BLACK AND SILVER IPHONE SEIZED
FROM A VEHICLE OPERATED BY
TERREL WALKER ON NOVEMBER 11,
2019

No. 2:19-mj-342-JHR

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Robert Ekey, having been duly sworn, state as follows:

**INTRODUCTION**

1.  I am a Special Agent with the Food and Drug Administration, Office of Criminal Investigations (FDA OCI), assigned to the Windham Resident Office in Manchester, NH. As such, I am authorized to conduct criminal investigations, make arrests, and execute search and arrest warrants for offenses in violation of the Federal Food, Drug and Cosmetic Act (FDCA), Title 21, United States Code, Sections 301-395 and related violations of Title 18 of the United States Code and related violations of Title 18 and Title 21 of the United States Code. I have been a federal law enforcement officer since 1998. Prior to joining FDC OCI, I was employed as a Special Agent with the Department of Housing and Urban Development, Office of Inspector General and the Treasury Inspector General for Tax Administration, and as an Inspector with the Internal Revenue Service (IRS), Inspection Service. I have been a Special Agent with FDA OCI for over ten years. I have completed the Special Agent Training Program at the Federal Law Enforcement Training Center, IRS Inspector Basic Training Program, FDA OCI Special Agent Training Program and the FDA OCI Food and Drug Law Training Program, which covered various legal aspects of criminal enforcement of the FDCA related to the sales of misbranded and adulterated drugs. I have been the affiant on numerous search and arrest warrants and have

conducted numerous investigations regarding violations of Titles 18 and 21 of the United States Code.

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property – a cellular telephone – further described below - which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement personnel.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. The property to be searched (hereinafter "the Device") consists of

- a black and silver iPhone



The Device is presently located within the custody of law enforcement within the District

of Maine.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On November 11, 2019, at approximately 2:30 p.m., Maine State Trooper Tyler Harrington while sitting stationary at the West Gardiner Toll Booth on the Maine State Turnpike, observed a silver vehicle traveling southbound with a Maine registration, but no Maine inspection sticker. Trooper Harrington also observed the vehicle had tinted plate covers, making it difficult to see the registration, other than it was from the State of Maine.

7. Trooper Harrington followed the silver vehicle and observed the vehicle fluctuate between speeds and weave amongst the lane. As Trooper Harrington drove closer to the vehicle, he was able to observe the registration was from Maine and expired July 2019.

8. Trooper Harrington activated his lights and the silver vehicle came to a stop around mile marker 39. As Trooper Harrington approached he could smell the odor of burnt marijuana emanating from the vehicle.

9. He approached the passenger side window and asked who was smoking marijuana. Both the driver and passenger denied smoking. Trooper Harrington immediately recognized the passenger as Person A, and the driver was identified as Terrel Walker by a United States Passport card.

10. Walker handed Trooper Harrington an updated vehicle registration. Walker admitted to being on bail when asked, but when asked to step out of the vehicle Walker did not get out of the vehicle when instructed.

11. Trooper Harrington asked Walker to get out of the vehicle a second time and

attempted to open the driver's side door. Walker locked the doors from the inside and asked Trooper Harrington if "this was legal?" Walker held a black and silver iPhone in his hand while sitting in the driver's seat.

12. Walker finally complied and exited the vehicle. Upon exiting, Walker placed the phone on the driver's seat. Trooper Harrington smelled the odor of burnt marijuana coming from Walker's person. Walker admitted to being on bail out of York County for a drug and gun charge. Walker was detained for being abrasive and non-complaint, and placed in the front seat of Trooper Harrington's cruiser because it was cold outside.

13. Trooper Harrington called for back-up and ran Walker's name into the computer, pulling up Walker's bail conditions pursuant to the State of Maine. The conditions included full search and test without reasonable articulable suspicion. Trooper Harrington also learned that there was a federal arrest warrant for Walker signed by United States Magistrate Judge John H. Rich III, on November 6, 2019, Docket No. 2:19-mj-326-JHR.

14. It was further learned that the silver vehicle was registered to Walker and that Person A had an active warrant for his arrest. Person A was removed from the vehicle.

15. A non-marijuana canine arrived on scene and conducted a sniff of the vehicle. The canine did not indicate on the vehicle.

16. A subsequent search of the vehicle pursuant to Walker's bail conditions yielded a black satchel bag in the front seat with approximately $2000 in US currency and a Massachusetts license with Walker's name on it. A search of the trunk yielded a one (1) blue duffle bag filled with vacuum sealed marijuana, and one (1) black trash bag filled with vacuum sealed marijuana. In addition inside the black garbage bag were four (4) clear capsule pills containing what appeared to be a brownish/tannish powder.

4

17. Trooper Harrington estimated the amount of marijuana seized was approximately fifteen (15) pounds.

18. In my training and experience the amount of marijuana recovered is consistent with further distribution and not with personal use.

19. The black and silver iPhone Walker placed on the driver's seat of the vehicle was recovered.

20. Based on my training and experience, and conversations with other law enforcement agents who have conducted controlled substance distribution investigations, I know that those involved in drug conspiracies (a) often communicate with their co-conspirators about drug trafficking and/or the laundering of drug proceeds using cellular phones; (b) frequently use these devices to send text messages, emails, and digital photographs and/or videos to their co-conspirators; (c) often use the camera features on cellular telephones to take photographs and/or videos of themselves and/or their co-conspirators; (d) often store lists and records made in furtherance of drug trafficking along with contact names and numbers and other relevant contact information for their co-conspirators in cellular phones; and (e) often use multiple cellular telephones in furtherance of criminal activity and may not claim ownership of phones used in furtherance of criminal activity when questioned by law enforcement. Based on my training and experience, I also know that many cellular telephones can send, receive, and store digital photographs, instant messages, voice messages and text messages, and also contain phone book/contact lists, and call history features including incoming, outgoing and missed calls, among others.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Cellular telephone: A cellular telephone is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard

6

drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

7

    to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

  e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

  f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  22. Based on my training, experience, and research, I know that smart phones like the ones described in this affidavit have capabilities that allow them to serve as cellular telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and

8

experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices such as cellular telephones can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the electronic device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of any cellular

telephone or storage medium consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. Based on the information detailed above in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (possessing with intent to distribute a controlled substance) have occurred, and that evidence of those violations, including the items set forth above, are likely to be found in the Devices described above. I respectfully request that search warrants be issued for the locations listed in Attachment A authorizing seizure of the items listed in Attachment B of this affidavit.

I hereby swear under oath that the information set forth in this affidavit is true and correct to the best of my knowledge, information, and belief, and I make this oath under penalties of perjury.

Robert Ekey
Special Agent
Food and Drug Administration

10

Subscribed and sworn to before me this 27th day of November, 2019.

_____
John H. Rich III
United States Magistrate Judge

11